**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**Case No. 20-61208-CIV-ALTMAN/Hunt**

SIMPLIFIED IMAGING & DIAGNOSTICS,
SIMPLIFIED IMAGING SOLUTIONS LLC
d/b/a IMAGING SOLUTIONS (SIS),

    Plaintiff,

vs.

PETER ROUVELAS, M.D., P.C.,

    Defendant.
_____/

**<u>DEFENDANT PETER ROUVELAS, M.D., P.C.'S
MOTION TO DISMISS COMPLAINT</u>**

    **COMES NOW** Defendant Peter Rouvelas, M.D., P.C., through the undersigned counsel, and pursuant to Federal Rule of Civil Procedure 12(b)(6) and 28 U.S.C. § 1332 files this Motion to Dismiss Complaint and states:

**<u>Background Facts</u>**

    1.    Plaintiff Simplified Imaging & Diagnostics, Simplified Imaging Solutions, LLC, d/b/a Simplified Imaging Solutions ("SIS"), is a medical services company providing personnel and equipment to medical practices.

    2.    SIS is a resident of the State of Florida.

    3.    Defendant, Peter Rouvelas, M.D., P.C. ("Rouvelas"), is a New York professional corporation providing physician services to its patients specializing in cardiology.

    4.    Rouvelas is a resident of the State of New York, and provides no medical or other services in the State of Florida. None of its providers are licensed to practice in Florida.

5. SIS filed in the Southern District of Florida on the basis of diversity jurisdiction under 28 U.S.C. § 1332, claiming an amount in controversy of $151,767.00.

6. SIS's single-count complaint is predicated on an alleged breach of contract by Rouvelas and contains no other claims or basis for relief.

### Facts Related to the Damages under the Contract

7. In February 2018, the parties entered into a Services and Maintenance Agreement (the "Agreement") under which SIS was to provide certain personnel, equipment, and materials for cardiac diagnostic testing. [Doc. 4-1, p. 2]. SIS was also to provide quality control, accreditation, license maintenance, and equipment service and repair. [*Id.*]. This contract is the one under which SIS brought suit. There are no other agreements to which SIS and Rouvelas are parties.

8. The Agreement contained a fee schedule purportedly obligating Rouvelas to conduct a minimum of 350 tests per contract year. [*Id.*, at p. 3]. If Rouvelas did not conduct the requisite number of tests, SIS would impose a per test penalty for each test below the quota.

9. The Agreement contemplates two (2) types of tests being performed and supported by SIS: "nuclear stress tests"; and "plain stress tests." Under the clear and unambiguous language of the Agreement, Rouvelas was not required to order or perform any minimum number of either nuclear or plain stress tests, just 350 tests annually. Rouvelas could satisfy its annual testing quota through the ordering of only nuclear stress tests, only plain stress tests, or a combination thereof.

10. Since Rouvelas could satisfy the testing quota through the ordering and performance of just plain stress tests, SIS's damages for breach are limited to its compensation for unperformed "plain stress tests" up to the 350 test annual quota.

11. The contract sets the "remedy" for missing the quota as the "monetary equivalent as per below" (listing a range of per test fees based on type and volume). [Doc. 4, p. 3]. Again, by its plain terms, if the contract permits the quota to be satisfied by conducting only plain stress tests, then the quota shortfall can be satisfied by Rouvelas paying thirty-two dollars ($32.00), the compensation owed to SIS for each plain stress test, for each test below the 350 test annual minimum

12. The maximum quota shortfall amount to which SIS was entitled on an annual basis was 350 tests times thirty-two dollars ($32.00) per test. While it may have been nice for SIS to receive compensation for the more expensive nuclear stress tests, the fact remains Rouvelas was not obligated to order or perform any nuclear stress tests.

13. Notwithstanding issues of unjust enrichment and unlawful liquidated damages provisions, had Rouvelas not performed any tests whatsoever over the three year term of the Agreement, SIS would be entitled to receive a maximum of $33,600.00. That number is calculated by multiplying 350 tests per year for three years (1050 tests, total) by the $32.00/test quota makeup amount.

14. Pursuant to 28 U.S.C. § 1332, this Court only has diversity jurisdiction over claims with at least $75,000.00 at issue. The maximum amount in controversy under the Agreement is $33,600.00, less than the jurisdictional threshold to invoke the Court's diversity jurisdiction. Consequently, the Complaint should be dismissed.

### Facts Related to Failure to Satisfy Condition Precedent

15. Section VI(1) of the Agreement requires a party claiming a breach give notice of the breach and an opportunity to cure that breach within ten (10) calendar days. Specifically, it states:

> **Default, Notice and Cure.** Upon either party asserting the existence of a breach of the terms of this agreement by the other party, notice via certified mail (return receipt requested) shall be provided by the non-breaching party to the breaching party specifying the nature of the purported breach. The purported breaching party shall have 10 calendar days from the receipt of the notice of breach within which to cure the breach. Notice shall be conclusively deemed received by the purported breaching party on the 3rd business day after the date of the mailing of the notice. During the 10-day cure period SIS may elect to suspend their performance of the provisions of Agreement [sic] not related to non-disclosure of Proprietary or Confidential information.

[Doc. 4, pp. 4-5].

17. The Complaint charges a failure to meet the annual 350 test quota for the periods from:

   a. February 17, 2018 through February 16, 2019;

   b. February 17, 2019 through February 16, 2020; and

   c. February 17, 2020 through February 16, 2021.

[Doc. 1, p. 2].

18. SIS never provided notice of breach and an opportunity to cure for any of the periods described above.

19. SIS did, however, send Rouvelas a letter dated March 2, 2020, making a demand for an alleged testing quota shortfall for the period between July 2018 and July 2019. SIS claimed damages of $23,652.00. This amount resulted from an alleged shortfall of 108 tests multiplied by the highest pricing level, $219.00. *See* Exhibit (1).

20.     According to the Complaint, the period of July 2018 through July 2019 is not a valid quota window and the notice should not be seen to satisfy the conditions precedent in the Agreement. Or, alternatively, the notice evidences a quota period which contradicts and invalidates that in the Complaint and this matter should be dismissed.

21.     In either event, SIS failed to satisfy the conditions precedent to filing the present suit and it should be dismissed.

### SIS's Failure to Plead Valid Breach of Contract

22.     The Agreement states that fees to SIS do not begin to accrue until the date on which Rouvelas's cardiac testing lab is accredited and performs its first procedure. [Doc. 3, p. 3].

23.     Rouvelas' lab was not up and running until July 18, 2018, largely because SIS failed to assist with the credentialing process, failed to be present for inspections, and failed to provide working equipment.

24.     The alleged time periods in the Complaint contemplate services beginning on the date the parties signed the Agreement, February 17, 2018. They did not start on that date.

25.     Consequently, the Complaint fails to allege an actual breach of the Agreement as it fails to accurately specify intervals during which Rouvelas was purportedly obligated to perform 350 tests.

### Memorandum of Law

### I.     SIS Failed to Plead Facts Sufficient to Establish Diversity Jurisdiction

A plaintiff asserting diversity jurisdiction always bears the burden of establishing the amount in controversy once it has been put in question. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) ("[T]he party invoking the court's jurisdiction bears the burden of proving, by a

preponderance of the evidence, facts supporting the existence of federal jurisdiction."); *see also Rosenboro v. Kim* 994 F.2d 13, 17 (D.C. Cir. 1993).

In determining whether the jurisdictional amount is satisfied, the Court is not bound by SIS's representations regarding its claim, nor must it assume that SIS is in the best position to evaluate the damages it seeks. *Earl v. Diebold*, 2015 U.S. Dist. LEXIS 23052 (S.D. Ala. Feb. 5, 2015) (citing *Pretka v. Kolter City Plaza II, Inc.*, 608 F.3d 744, 771 (11th Cir. 2010)). Eleventh Circuit precedent permits district courts to make "reasonable deductions, reasonable inferences, or other reasonable extrapolations" from the pleading to determine whether the amount in controversy requirement for diversity jurisdiction is met. *Roe v. Michelin North America Inc.*, 613 F.3d 1058, 1062 (11th Cir. 2010). "[C]ourts may use their judicial experience and common sense in determining whether the case stated in a complaint meets federal jurisdictional requirements." *Id.*

If, from the face of the pleadings, it is apparent that SIS cannot recover the amount of damages it claimed, the Court must dismiss. *Rosenboro*, 994 F.2d at 16-17. Here, the Complaint claims $151,767.00 in damages through the use of a calculation that directly contradicts the plain language of the underlying contract. As stated above, the Agreement evidences a penalty of $32.00 per test under the 350 annual test requirement. SIS can, at best, claim no more than $33,600.00 in damages, less than half of the jurisdictional requirement under 28 U.S.C. § 1332. That number assumes Rouvelas performed absolutely no tests, which is not true, nor alleged in the Complaint.

Furthermore, even if SIS were entitled to a higher amount per unperformed test, it failed to properly allege its entitlement to those damages. SIS claimed periods of entitlement from February 17, 2018 through February 16, 2019; February 17, 2019 through February 16, 2020; and February 17, 2020 through February 2021. The Agreement specifies that the period for counting tests does

not start until Rouvelas successfully established its cardiac testing laboratory and performed its first paid test. That did not occur until July 18, 2018, meaning the period of time SIS used to measure damages in the Complaint is plainly erroneous and invalid. Moreover, the "February to February" measurement period is contrary to SIS's own demand sent to Rouvelas on March 2, 2020, wherein SIS claimed a July to July measurement period. *See* Exhibit (1).

Based on the foregoing, the Court should dismiss this case for lack of jurisdiction because SIS failed to carry its burden to prove the amount in controversy requirement of 28 U.S.C. § 1332.

## II.     SIS Failed to State a Claim for Relief Under 12(b)(6), F.R.C.P.

In deciding a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the Court usually must accept the factual allegations in SIS's Complaint as true and take them in the light most favorable to SIS. *See Erickson v. Pardus*, 551 U.S. 89 (2007). To satisfy the pleading requirements of Federal Rule of Civil Procedure 8, a complaint must contain a short and plain statement showing an entitlement to relief, and the statement must "give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests." *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506 (2002); *see also Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007); *Dura Pharms., Inc. v. Broudo*, 544 U.S. 336 (2005).

While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, SIS, nonetheless is obligated to provide the grounds for its entitlement to relief with more than labels, conclusions, or a formulaic recitation of the elements of a cause of action. *Twombly*, 550 U.S. at 554-55. "Factual allegations must be enough to raise a right to relief above the speculative level on the assumption that all of the complaint's allegations are true." *Id.* at 1965. Plaintiff must plead enough facts to state a plausible basis for the claim. *Id.*

SIS attached a copy of the Agreement between it and Rouvelas to the Complaint. [Doc. 4-1, pp. 1-7].  A copy of a written instrument attached as an exhibit to the pleading is a part of the pleading for all purposes, including Rule 12(b)(6) motions to dismiss. *See* Fed. R. Civ. P. 10(c); *Solis-Ramirez v. U.S. Dep't of Justice*, 758 F.2d 1426, 1430 (11th Cir. 1985).  "[W]hen the exhibits contradict the general and conclusory allegations of the pleading, the exhibits govern." *Griffin Indus., Inc. v. Irvin*, 496 F.3d 1189, 1206 (11th Cir. 2007).  So, while courts must generally accept the allegations in the complaint as true when considering a motion to dismiss, acceptance is not necessarily absolute when contradicted by an exhibit or attachment to the pleading. *Id.*

### a. SIS Failed to State a Claim for Breach of Contract

SIS's failure to plead the jurisdictional amount in controversy is also a failure to plead a cognizable breach of contract.  The Agreement does not obligate Rouvelas to pay SIS anything at all, or to conduct any tests, until Rouvelas' cardiac stress testing lab was credentialed, certified, and processing patients.  The Complaint fails to allege the date on which Rouvelas' lab was up and running.  The lab clearly could not be operational on the date the parties signed the Agreement since Rouvelas had yet to: purchase a Digirad 2020 camera from SIS; SIS had not yet "assisted with obtaining ICANL Accreditation"; receive its Radioactive Material License. [Doc. 4-1, p. 2]. Consequently, the February to February windows used to determine the purported breaches and to calculate the ensuing damages are inaccurate and contradicted by facts of the case and the plain language of the Agreement.  The Court need look no further than SIS's March 2, 2020, demand letter to determine that Rouvelas owed no compensation to SIS beginning in February 2018. *See* Exhibit (1).  The demand letter identifies the period for establishing the testing quotas as July to July, not February to February.  The discrepancies in SIS's allegations, the terms of the Agreement, and its

own attempts to collect on the alleged breach amount to a fatal flaw in the Complaint warranting dismissal.

SIS's fundamental claim in the Complaint is that Rouvelas' alleged failure to conduct 350 cardiac stress tests annually is a breach of the Agreement. That is an erroneous interpretation of the contract's terms and contradicted by its plain language. The Agreement obligates Rouvelas to conduct 350 cardiac stress tests annually. If, in a given year, Rouvelas did not meet that quota, it would be obligated to pay SIS a predetermined amount for each test below the quota. [Doc. 4-1, p.3]. Not meeting the quota does not amount to a breach of contract. Failing to pay the per test fee for the shortfall is the breach.

The Complaint only alleges Rouvelas did not meet the 350 annual test threshold. It does not allege SIS invoiced Rouvelas for a shortfall and that Rouvelas failed to pay.

### b.     SIS Failed to Satisfy Conditions Precedent to Suit

A defendant may deny the occurrence or performance of a condition precedent in a motion to dismiss, but it must do so with particularity. *Bloodworth v. Colvin*, 17 F. Supp. 3d 1245 (N.D. Ga. Jan. 14, 2014). Once a defendant denies the occurrence of conditions precedent with particularity, the burden of proving the condition has been satisfied falls on the plaintiff. *Jackson v. Seaboard Coast Line R.R. Co.*, 678 F.2d 992, 1010 (11th Cir. 1982). Section VI(1) of the Agreement requires a party claiming a breach give notice of the breach and an opportunity to cure that breach within ten (10) calendar days. Specifically, it states:

> **Default, Notice and Cure.** Upon either party asserting the existence of a breach of the terms of this agreement by the other party, notice via certified mail (return receipt requested) shall be provided by the non-breaching party to the breaching party specifying

>   the nature of the purported breach. The purported breaching party shall have 10 calendar days from the receipt of the notice of breach within which to cure the breach. Notice shall be conclusively deemed received by the purported breaching party on the 3rd business day after the date of the mailing of the notice. During the 10-day cure period SIS may elect to suspend their performance of the provisions of Agreement [sic] not related to non-disclosure of Proprietary or Confidential information.

[Doc. 4-1, pp. 4-5].

The Complaint charges a failure to meet the annual 350 test quota for three periods from:

>   a.   February 17, 2018 through February 16, 2019;
>
>   b.   February 17, 2019 through February 16, 2020; and
>
>   c.   February 17, 2020 through February 16, 2021.

[Doc. 1, p. 2].

Although SIS alleged in paragraph 7 of the Complaint that it satisfied all conditions precedent to filing suit, or that they were otherwise waived, it offers no specific averments or evidence substantiating that claim. SIS never provided notice of breach and an opportunity to cure for any of the periods described above. SIS was required to plead more than a formulaic recitation of the elements of a cause of action in order to satisfy its pleading obligations. *Twombly*, 550 U.S. at 554-55.

SIS cannot establish all of the elements essential to its breach of contract claim, namely compliance with the Agreement's notice and opportunity to cure requirements. "Under Florida law, when a written contract requires notice as a condition precedent to maintaining suit, that condition

must be met absent a valid excuse." *S. Broad. Group v. Gem Broad.*, 145 F.Supp.2d 1316, 1325 (M.D. Fla. June 7, 2001) (citing *Eglin Village v. Barnett Nat'l Bank*, 86 So. 2d 271, 272 (Fla. 1956)).

Not only did SIS not give notice of a breach of any of Rouvelas' obligations for a February to February period, the Complaint seeks damages for a supposed anticipatory breach. As a matter of law, SIS cannot satisfy its obligation to provide notice and an opportunity to cure a breach that has not yet occurred. Even assuming Rouvelas ran no tests between February 2020 and the date SIS brought suit, Rouvelas cannot be in breach of the agreement until February 2021, at the earliest. Even then, Rouvelas would have the right to avoid a breach by paying the monetary penalty for not meeting the cardiac stress test quota for the previous year. The Agreement does not contemplate a breach occurring until Rouvelas is invoiced for a quota shortfall and refuses to pay it for a period of at least ten (10) calendar days following receipt of the demand. Merely missing the quota is not a breach. Failing to pay the quota shortfall after notice, however, is.

The Complaint is devoid of any facts which would amount to an anticipatory breach. In fact, the Complaint states, with respect to its claim for anticipatory breach:

> 13. Between February 17, 2020 and February 16, 2021, Defendant failed to conduct 350 [tests] annually. Indeed, Defendant has anticipatory [sic] breached the contract.

[Doc. 1, p. 2].

Leaving aside the fact that beginning on March 7, 2020, in response to the COVID-19 pandemic, New York Governor Andrew Cuomo issued Executive Orders 202, 202.10, and 202.25 which suspended the performance of elective procedures, including the cardiac stress tests at issue in this case, through May 29, 2020, making it impossible for Rouvelas to perform for nearly three

months, there is no allegation in the Complaint that Rouvelas indicated it would not perform any stress tests or that it would refuse to honor any part of the Agreement. "An anticipatory breach of contract occurs before the time has come when there is a present duty to perform as the result of words or acts evincing an intention to refuse to perform in the future." *Dragon Jade Int'l, Ltd. v. Ultroid, LLC*, 2018 U.S. Dist. LEXIS 20943 *12 (M.D. Fla. Jan. 23, 2018) (quoting *Alvarez v. Rendon*, 953 So. 2d 702, 709 (Fla. 5th DCA 2007)). A repudiation "may be evidenced by words or voluntary acts but the refusal must be distinct, unequivocal, and absolute." *Mori v. Matsushita Elec. Corp. of Am.*, 380 So. 2d 461, 463 (Fla. 3d DCA 1980).

SIS alleged no facts which indicate Rouvelas repudiated its obligations under the Agreement. The Complaint bears no allegation Rouvelas spoke or acted in a way which indicated it unequivocally and absolutely would not perform. In fact, its time to perform will not arise until February 2021, at the earliest. Absent a patent repudiation, no cause of action for anticipatory breach can lie. *Mori*, 380 So. 2d at 463.

**WHEREFORE**, Defendant Peter Rouvelas, M.D., P.C., respectfully requests the Court enter an order dismissing this action and awarding Defendant its attorneys' fees and costs pursuant to the terms of the Agreement.

## CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that I have filed this document electronically with the Clerk of Court via the CM/ECF System, which automatically serves all counsel of record, this 10th day of August 2020.

/s/ Lance O. Leider

_____

**LANCE O. LEIDER, J.D., LL.M.**
Florida Bar No.: 96408
Primary E-mail: LLeider@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**GEORGE F. INDEST III, J.D., M.P.A., LL.M.**
Florida Bar No.: 382426
Primary e-mail: GIndest@TheHealthLawFirm.com
Secondary e-mail: CourtFilings@TheHealthLawFirm.com
TRIAL COUNSEL/LEAD ATTORNEY
ATTORNEY TO BE NOTICED
**ATTORNEYS FOR DEFENDANT**
**PETER ROUVELAS, M.D., P.C.**

Exhibits:     (1)     Letter from SIS to Rouvelas, dated March 2, 2020

LOL/pa
S:\2600-2699\2670\001\410-Pleadings-Drafts & Finals\Motion to Dismiss-1a.wpd