

17501 BISCAYNE BOULEVARD, SUITE 420, AVENTURA, FL 33160
www.solnicklaw.com
Phone: 786-629-6530
Fax: 786-472-5670

May 28, 2020

VIA CERTIFIED MAIL
RETURN RECEIPT REQUESTED

Dr. Peter Rouvelas
Peter Rouvelas M.D. P.C.
8115 7th Avenue
Brooklyn, NY 11228

RE:   *Simplified Imaging Solutions v. Peter Rouvelas M.D. P.C.*

Dear Dr. Rouvelas:

    I am the legal representative of Simplified Imaging Solutions (SIS). Please accept this as a revised letter as a demand for payment according to the attached contract.

    On February 18, 2018, SIS and your practice entered into the attached contract. The contract required you to perform no less than 350 tests annually and/or pay a monetary equivalent.

    Our records indicate that you completed 127 tests between February 2018 and January 2019; 196 tests between February 2019 and January 2020; and 34 tests between February 2020 and today. Based upon communications with you, it is apparent that even prior to Covid-19 that you did not intend to complete any additional testing for the 2020-2021 year, and thereby have anticipatory breached the contract. This has resulted in a shortage of 693 tests.

    As a result, your practice owes SIS the monetary equivalent of $151,767.00 pursuant to the contract terms. My client is providing you 10 days to cure in accordance with the contract. Accordingly, pursuant to Article VI of the Agreement, SIS respectfully requests payment in the amount of $151,767.00, plus attorneys' fees and costs.

    My client requests that the requested amount be paid within 10 days and payable to

Solnick Law P.A. Trust Account.  If my client's demands are unmet, I have been instructed to take any and all legal measures necessary to recover the monies it is entitled to pursuant to the contract, which requires the payment of legal fees and costs.

Since this will be a costly procedure for you, I would suggest you call me to discuss a resolution without resorting to such procedures.  We therefore trust this will not be necessary, and that $151,767.00 will be paid within 10 days.  Should we not hear from you within the 10 days, we will have no other option than to proceed by pursuing all available legal remedies in the State of Florida.

Should you wish to discuss the matter further, I may be reached at the number listed above.

Cordially,


/s/ *Peter J. Solnick*
Peter J. Solnick, Esq.

**Simplified Imaging Solutions**
*Making Imaging Simple and Affordable*

THIS SERVICES AND MAINTENANCE AGREEMENT ("Agreement") is executed and delivered this 17 day of FEBRUARY, 2018, by and between PETER ROUVELAS MD PC and Simplified Imaging Solutions, LLC (SIS), a Florida limited liability company, located at 10396 W. SR 84 Suite 104, Davie, Florida 33324 (all referred herein collectively as the "Parties").

I.   **RECITALS**

**WHEREAS**, the Practice is licensed in the state of New York to provide medical services to the public; and

**WHEREAS**, SIS has experience with and maintenance of nuclear diagnostic procedures and facilities, and has agreed to provide specific goods and services within its areas of expertise to Practice; and

**WHEREAS**, Practice desires to contact and engage with SIS to assist Practice in the operation and provision of imaging :

**NOW THEREFORE**, in consideration of these premises and the terms and conditions of this Agreement, the parties agree as follows:

II.   **RELATIONSHIP OF THE PARTIES**

1.   **Control Retained in Practice.** Practice shall at all times retain control over the operation of its Practice.

Practice's control shall specifically include all clinical decision-making, general administrative, lab functions, day-to-day operations, space leasing, all billing decisions, and the control of personnel.

2.   **Medical and Professional Matters.** All medical and professional matters in the operation of the Practice and the Lab shall be and remain the responsibility of the Practice.

The Practice shall have complete control over the diagnosis, treatment and billing of its patients, and SIS shall not exercise any supervision or control over the individual medical treatment or billing of Practice patients.

Simplified Imaging Solutions
*Making Imaging Simple and Affordable*

Nothing contained herein shall be construed so as to hinder any Practice physician's independent judgment in the practice of medicine or in any manner that would violate any laws, statutes or regulations governing the practice of medicine.

### III.  DUTIES AND OBLIGATIONS OF SIS

1. During the Term of this Agreement, Provision of Nuclear Materials. During the Term of this Agreement and for each scheduled test on the days of testing, SIS agrees to provide Practice:

   A. Licensed nuclear technologist on days of testing

   B. Isotope (excluding chemical stress). 2 injections. Rest 10mci +/- 20%, Stress 30mci +/- 20%

   C. Nuclear camera service and repair on Digirad 2020 purchased from S.I.S.

   D. QC Program

   E. Physicist services

   F. Assist with obtaining and maintaining ICANL Accreditation

   G. HIPAA Compliance. SIS and Practice agree to execute a HIPAA Business Associates Agreement (the "BA Agreement") for purposes of compliance with HIPAA. A copy of the BA Agreement is attached hereto and made a part of this agreement.

   H. 15% Cancellation/no show coverage

   I. RAM license maintenance

Simplified Imaging Solutions

*Making Imaging Simple and Affordable*

## IV. DUTIES AND OBLIGATIONS OF THE PRACTICE

### A. Payment of Fees and Fee Schedule

In order to preserve the lower pricing levels and satisfy regulations related to "pay per click," Practice agrees to conduct a minimum of 350 tests annually (per 12 months) and or pay the monetary equivalent as per below:

1. $219 per nuclear stress test for patients 1-5 on any given testing day
2. $209 per nuclear stress test for patient 6 and beyond on any given testing day
3. $209 per nuclear stress test If volume exceeds 25 patients in a month but is less than 40 (30 days)
4. $199 per nuclear stress test if volume exceeds 40 patients in a month (30 days)
5. Practice will pay for a minimum of 4 tests on any given day of testing
6. $32 for plain stress tests
7. Above the 4 patient minimum and if over the 15% cancellation coverage, Practice shall pay a reduced charge of $79 related to patient no shows/cancellations without 24 hour prior notification

B. Fees to SIS shall accrue beginning on the date Practice's Lab performs its first procedure during the term of this Agreement (the "Commencement Date"). Practice will be invoiced by SIS twice monthly (every two weeks), and payment shall be due on receipt of the invoice by Practice. The second invoice of each month shall reflect and calculate any and all volume pricing as per IVA.

C. Billing. Practice will bill patients and third party payers in its own name and as it deems appropriate for all of the services performed at the Practice applicable to this Agreement.

## V. REPRESENTATIONS AND WARRANTIES

### 1. SIS's Representations and Warranties.

SIS represents and warrant to Practice as follows:

A. No payment shall be made at any time, directly or indirectly, by SIS to any person or entity as an inducement or remuneration for the referral of a patient to the Practice, and SIS

Simplified Imaging Solutions
*Making Imaging Simple and Affordable*

shall not take any action in violation of any applicable state, federal or local laws, rules or regulations affecting patient brokering, fee-splitting, self-referrals or kickbacks for health care services. Nothing in this Agreement shall require SIS to refer any person to the Practice.

B. This Agreement is commercially reasonable, and the compensation under this Agreement represents the fair market value of the Services and was negotiated on an arms-length basis, without taking into consideration the volume or value of services performed or to be performed by either SIS or Practice under this Agreement.

2. **The Practice's Representations and Warranties to SIS.**

A. The Practice represents and warrants to SIS that it is fully licensed and qualified as required by federal, state and local law or regulation to provide physician and other medical services to its patients. Each physician employed or contracted by the Practice is duly licensed to practice medicine in the state of New York.

B. The Practice is in full compliance with all federal, state and local fee splitting, self-referral, anti-kickback laws and fraud and abuse laws in its performance of nuclear diagnostic testing. Practice shall make no payment or other remuneration at any time, directly or indirectly, in cash or in kind, to any person or entity as an inducement for the referral of a patient to the Practice.

C. Practice is in compliance and will continue to comply with all policies, standards, regulations rules and laws pertaining to reimbursement, billing and collection related to services rendered including but not limited to the obtaining of informed patient consent of risks related to medical protocols, diagnostic testing and pharmaceuticals of any kind that are used in the course of testing.

## VI. DEFAULT

1. **Default, Notice and Cure.** Upon either party asserting the existence of a breach of the terms of this agreement by the other party, notice via certified mail (return receipt requested) shall be provided by the non-breaching party to the breaching party specifying the nature of the purported breach. The purported breaching party shall have 10 calendar days from the receipt of the notice of breach within which to cure the breach. Notice shall be conclusively deemed received by the purported breaching party on the 3rd business day after the date of the mailing of the notice. During the 10-day cure period SIS may elect to suspend their performance of the

Simplified Imaging Solutions
*Making Imaging Simple and Affordable*

provisions of Agreement not related to non-disclosure of Proprietary or Confidential information.

2. **Attorneys' Fees**. In the event of a breach of this Agreement, the non-breaching party shall be entitled, in addition to any other remedy provided by law, to the recovery of all costs and reasonable attorney fees incurred in the enforcement of its rights under this Agreement.

VII. **TERM AND TERMINATION OF AGREEMENT**

1. **Term of this Agreement (also referred to as "Effective Dates"):** The term of this Agreement shall commence on FEBRUARY 17 2018, and continue in effect for a three (3) year period (the "Initial Term") or until its earlier termination as provided herein. This Agreement shall automatically renew for successive one (1) year periods absent 60 days advance written notice to the other party by the party not desiring to renew the agreement.

2. **Termination for Cause With Notice Requirement**. A non-breaching party may terminate this Agreement for "cause" at any time if the other party is in breach of any material covenant, agreement, term or provision of this Agreement, and such breach shall continue for more than 15 days after delivery of written notice to the breaching party stating the specific provisions of the contract that are being breached. Written notice of the breach shall include documentation or description sufficient to inform the breaching party of the nature of the asserted breach. Cause is defined as uncured material breach of any term within this agreement.

3. **Obligations Upon Termination Under Any Circumstance**. SIS shall deliver to Practice all documents and records in its possession relating to any patients treated at the Lab. Similarly, upon termination of this Agreement, Practice must deliver to SIS all documentation and all documents and records of SIS or SISPP, and pay all open invoices.

VIII. **INDEMNIFICATION**

1. **Indemnification by Practice.** Practice shall defend, indemnify and hold harmless SIS and their shareholders, members, directors, officers, agents, and employees from and against liability for any and all costs (including court costs), expenses, fees (including reasonable attorneys' fees) and payments arising out of Practice's breach of this Agreement or the negligence or intentional acts or omissions by Practice or Practice's shareholders, members, directors, officers, agents, subcontractors or employees. This provision shall survive termination of this agreement.

Simplified Imaging Solutions
*Making Imaging Simple and Affordable*

2. **Indemnification by SIS.** SIS and/or SISPP shall defend, indemnify and hold harmless Practice and its shareholders, members, directors, officers, agents, and employees from and against liability for any and all costs (including court costs), expenses, fees (including reasonable attorneys' fees) and payments arising out of SIS's breach of this Agreement or the negligence or intentional acts or omissions by SIS or SIS's shareholders, members, directors, officers, agents, subcontractors or employees. This provision shall survive termination of this agreement.

3. **Non-Solicitation of Personnel.** During the Term of this Agreement, and for a period of two (2) years following the termination of this Agreement for any reason, Practice shall not directly or indirectly, without the express written consent of SIS, solicit, attempt to cause, any employee or subcontractor of SIS to leave such employment or subcontractor relationship with SIS, and to accept employment with, or to contract with, Practice, or to accept employment with, or to contract with, any other person or entity that provides services to Practice which are the same or similar to the services provided by SIS under this agreement. Practice agrees to not hire any UND employee under any circumstances and understands that doing so would be financially harmful to SIS.

4. **Choice of Venue/Choice of Forum/Choice of Law.** Any action concerning or relating to the Terms of this Agreement shall be brought in a state or federal court in Broward County, Florida. The provisions and the enforceability thereof shall be interpreted under laws of Florida without regard to conflict of laws provisions.

5. **Notices.** All notices, requests, demands, and other communications hereunder shall be in writing and sent by U.S. Certified Mail (return receipt requested), or by hand delivery with proof of delivery, to or at the receiving party's address as set forth above. A party may change its address by giving notice in the manner provided in this provision. Notices following the above procedures shall be deemed received upon the earlier of actual receipt, or the 3rd business day after the date of the mailing of the notice if by Certified U.S. Mail (return receipt requested).

6. **Authority to Contract.** Each party represents and warrants that he/she or it, as the case may be, is authorized to enter into this Agreement and to be bound by the terms of it.

Moreover, the Parties mutually represent that they are not violating another agreement by entering into this Agreement.

**Simplified Imaging Solutions**
*Making Imaging Simple and Affordable*

**IN WITNESS WHEREOF,** the parties have executed this Agreement on the dates set forth below:

Practice __PETER ROUVELAS MD PC__          Simplified Imaging Solutions

Date: __FEBRUARY 17 2018__                  Date: _____

By: __peter rouvelas MD__                    By: _____

Printed Name: __PETER ROUVELAS MD__          Printed Name: _____

Its: __OWNER / PHYSICIAN__                   Its: _____
      (Title)                                          (Title)

As Guarantor: _____

- Start angle selectable.
- Time per view selectable.
- Continuous speed selection from one revolution per two minutes to one revolution per 30 minutes LCD Monitor

### Collimator

- Low energy High Resolution- General Purpose

### Radioactive Laboratory

- Atom lab 100 Dose calibrator or similar
- Extruded lead Bricks
- Unilock PinTec Syringe Shield
- Lead Lined Sharp Shield
- 14C Survey Meter with 44-Pancake probe
- Mini L- Shield
- Cs-137 Vial Source, 200 uCi

### New Stress Test ECG System

- Exercise Computer
- Exercise Monitor
- USB connection kit
- Recording Box
- 12 leads USB cable
- Stress ECG Software
- Rest ECG Software
- New Patient cable clips
- Software Manual on CD
- TMX 425 Treadmill
- Exercise Computer system cart

**Simplified Imaging Solutions**

10396 W State Rd. 84 Suite 104 Davie, Fl 33324 Phone(954)888-1195

Invoice
DATE: JANUARY 31, 2018

Sold To:
Dr. Peter Rouvelas

8115 7th Ave.
Brooklyn, NY 11228

Ship To:
Dr. Peter Rouvelas

8115 7th Ave.
Brooklyn, NY 11228

Description:

Pre owned, updated Digirad 2020 TC Nuclear Camera

### Collimator

- Low energy High Resolution- General Purpose

### Radioactive Laboratory/Hot Lab

- Atom lab 100 Dose calibrator or similar
- Extruded lead Bricks
- Unilock PinTec Syringe Shield
- Lead Lined Sharp Shield
- 14C Survey Meter with 44-Pancake probe
- Mini L- Shield
- Cs-137 Vial Source, 200 uCi

### Stress Test ECG System

- Exercise Computer
- Exercise Monitor
- USB connection kit
- Recording Box
- 12 leads USB cable
- Stress ECG Software
- Rest ECG Software
- New Patient cable clips
- Software Manual on CD
- TMX 425 Treadmill- holds up to 400 lbs
- Exercise Computer system cart

|  |  |
|---|---|
|  | $69,500.00 |
| SALES TAX | 6,168.13 |
| TOTAL | $75,668.13 |

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Dr. Peter Rouvelas
Peter Rouvelas M.D.P.C
8115 7th Avenue
Brooklyn, NY 11228

9590 9402 4272 8121 1752 19

2. Article Number (Transfer from service label)

7018 3090 0000 7153 5670

A. Signature
X Covid 19 ☐ Agent ☐ Addressee

B. Received by (Printed Name)   C. Date of Delivery
R723

D. Is delivery address different from item 1? ☐ Yes
   If YES, enter delivery address below:   ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☐ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Insured Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☐ Return Receipt for Merchandise
☐ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2015 PSN 7530-02-000-9053   Domestic Return Receipt

## PETER ROUVELAS MD PC
8115 7th Avenue, Brooklyn, NY 11228
Phone: 718-833-5303 Fax: 718-833-5304

June 16, 2020

VIA USPS PRIORITY MAIL WITH SIGNATURE CONFIRMATION

Peter J. Solnick, Esq.
SOLNICK LAW, P.C.
17501 Biscayne Blvd.  Suite 420
Aventura, FL 33160

Dear Mr. Solnick:

I am in receipt of your letter dated May 28, 2020.  Your letter stated that the Contract between SIS and my practice requires that I "perform no less than 350 tests annually and/or pay a monetary equivalent."  The part of the sentence you did not include is the schedule of fees for tests when fewer than 350 tests are performed.  On its face, the Contract does not require 350 tests to be performed; rather, that number was the threshold needed to receive preferential pricing.  Since I did not perform 350 tests, I was billed and paid the higher fees in accordance with the schedule in the Contract.  I never committed to any specific number of tests because I did not know if they would be medically necessary or not.  I was willing and did, in fact, pay the higher fees, in accordance with the invoices that SIS sent to me.

SIS is responsible, in general, for providing a nuclear technician for each session and the nuclear isotope per patient, among other responsibilities.  Your client did not regularly meet its obligations under the Contract.  Notwithstanding this fact, I continued to offer stress tests to my patients because their health is my first and foremost concern.  Although there were other times that SIS failed to send a technician to conduct the stress tests, it was in February 2020 (on the last Wednesday of that month) that I received a demand letter from SIS for over $23,000.00.  When my office manager communicated with an SIS representative, she was told that they would not send a technician that Friday unless we paid the amount demanded.  Contrary to the outrageous allegation that our conduct amounted to an anticipatory breach, it was SIS that actually breached its obligations.  I had seven stress tests booked for that Friday, and additional ones for the next month as well.  I had to cancel the tests booked for that Friday after SIS informed me of its intentions.  I had to communicate to the patients that our supplier would not be sending a technician for that Friday and that I would need to reschedule.  However, week after week SIS was refusing to send a technician and I had no choice but to cancel all the other stress tests that had been scheduled.  Inevitably I had to scramble to get Authorizations for the most urgent cases who had to receive their stress tests from other facilities.  This was a major inconvenience for both the patients and our office.  More importantly, many of these patients were relying on these tests in order to obtain other procedures.  As a result of SIS's refusal to live up to its obligations an incredible strain was placed on my clinical practice as I struggled to meet the patients' urgent medical needs.

In March the entire world was hit with a pandemic. Procedures such as sonography, stress tests and non-emergent angiogram/angioplasty procedures were not allowed. It is shameful that SIS and your office used this period to try to extract monies from me that were never owed to SIS in the first place, per the terms of the Contract.

Everyone is hurting right now financially, including myself, but not enough that I will not vigorously defend any lawsuit on this matter. I will do so on principle.

Sincerely,

*Peter Rouvelas MD*

Peter Rouvelas, MD